I'm surprised I don't see some NFL players in the audience. Some of you don't know that, but Rock Hill, as I understand it, is a place where you have a disproportionate number of NFL players. We will proceed unless one is going to argue the case today. Ms. Steinberg, I'll take you first up. May it please the Court. Being here today is a privilege, and I would like to express my gratitude to this country and to this Court for its attention to this case. And at this point, I will turn it over to the Court to ask any questions it may have. Well, judges, do you have any questions to ask? I have a question. We have the briefs and the records, and it looks pretty clear to me, but it's on you if you want to ask a question. I just have a question about the privilege issue. Sure. What standard of review should we apply to that ruling? To the privilege? Yes. Abuse of discretion. But I would like to say, to point out, developments in federal law over the past 30 years have tied the constitutionality of many types of municipal legislation directly to the purpose and motive of the legislatures. Well, can you give us one example of a question that was asked in the deposition by either Black or Youngblood that the district court wrongly held to be covered by legislative privilege, in your opinion? Many of the questions were tailored towards the factual basis for the legislation. Even, I believe I asked if the municipality has conducted any studies prior to amending the ordinance. I did not ask what the contents were of the reports, if any were, in fact, made. I was asking whether, the question was asking whether any studies were conducted at all. And it's a purely factual issue. And facts should not be protected. So you argue against extending legislative immunity in this case. What does that rely upon beyond the Gillip case? Do you want us to extend that? Why so? The main distinction is personal, whether or not legislators were personally sued. That's what the Supreme Court held. So that's the main distinction, whether or not they were going to be liable personally. And I believe when personal liability is removed, the inhibitant effect is significantly reduced. And we have substantial important federal interests at stake here. First Amendment rights, equal protection may not be the most important right. But the Dormant Commerce Clause is implicated. On your First Amendment claim, the elements on a claim of First Amendment retaliation include an adverse action. Correct. As I understand it, the city council actually amended the ordinance after you filed your lawsuit. Correct. In a manner that was beneficial to your client. Is that right? That is not correct. The new ordinance included a sunset provision, which eliminated my client's short-term rentals, most of them allocated in residential communities. The new ordinance prohibits short-term rentals in residential communities. Were those provisions present in the older ordinance as well? Those were added after the lawsuit filed? That's the only substantive change to the law. The city eliminated some of the most outrageous provisions, such as making the city council the ultimate decision-maker, which runs against the separation of powers principle. They also gave essentially veto power to each adjoining neighbor. They eliminated those provisions. But in addition, the main difference between the 2022 ordinance and the 2023 ordinance is the sunset provision, which eliminates my client's short-term rentals, the majority of them, because they are allocated in residential communities. Don't these types of ordinances exist in communities around the country? Yes, but do we have facts that precipitated the ordinance in all of those cases? I can't say that. Can anyone succeed us? Is there any case finding that these ordinances violate the constitutional rights of owners? I'm not sure, Your Honor. So there's no case finding essentially striking one of these ordinances? There is a Fifth Circuit opinion which found that the ordinance violated the Dormant Commerce Clause. Yes, we do have that. And what case is that? It is cited in the brief, both plaintiffs, ours and the defendant's. But you don't know the name of it? I do not have it in front of me. It's the only case that supports you? I do not believe so. There's a lot of constitutional authority. I thought you, when Judge Berner asked you for a case, you first said you didn't think there were any, and then you came up with the Fifth Circuit case. So are there others other than the Fifth Circuit case? Your Honor, I do not believe that equal protection and substantive due process claims are the most important claims in this case. Once the ordinance was amended in response to the lawsuit, the First Amendment retaliation became the highlight of plaintiff's case because of the sunset provision, which to this day remains totally unexplained. Even the post hoc justifications, they do not address why the city decided to eliminate existing short-term rentals, which operated without any negative effects on the community, which the city admitted publicly repeatedly. So nothing happened in between. The only change was the lawsuit. And also certain speech, if I may, I believe I have it in front of me. But if I got to keep having these debates to give us time to resolve a problem to protect neighborhoods in my city council district, I would just rather do away with short-term rentals. But if we have to go through this debate every single council meeting, I'm just ready to scrap the whole thing. We're coming before you tonight to fix something you brought up in our last meeting. I would think you'd be appreciative of that. That's what happened after, and that's exactly what they did. Well, I am aware that these types of ordinances do exist around the country. And I quickly skimmed your brief, and I did notice that the only Fifth Circuit case cited is from 1983, and I think that's before Airbnb or any of these short-term rentals existed. But in any event. So another distinction, which I do not believe other ordinances. I'm not saying municipalities don't have a right to regulate short-term rentals. They do. It's the way they were regulated in this particular case. I do not believe any other ordinance contained a First Amendment ban. There is no rational explanation as to how a ban on any gathering, any gathering, which is an exercise of the First Amendment rights associated in commercial districts, can promote the quality of residential communities, because then they continue to prohibit First Amendment rights exercised by guests. in commercial districts. At the same time, the ordinance is allowing commercial event venues to be operated in residential communities, which they allegedly are trying to protect from undue commercialization. I do not believe any other municipality has the code, which is as irrational as the one in Rock Hill. Judges, any further questions? No. Well, thank you, Ms. Steinberg. You have a few minutes for rebuttal. I guess this is a day for firsts for me as a judge of nearly 36 years on the appellate court. I don't think I've had a counselor come up and say, do you have any questions? But it's effective if that brings out the concerns of the court. So thank you for your argument. We will hear from the other side. Mr. White. Thank you. May it please the Court. I am Mark White with Spencer & Spencer in Rock Hill, South Carolina, and I represent the city of Rock Hill. Who's your last NFL player from Rock Hill? You weren't prepared to answer that question. I was trying to think. There's an offensive lineman from Rock Hill High that was drafted late. I don't remember his name. He's up in the water now. My son was young, and we came through when Rock Hill played North, I mean Northwestern played South Point, the new high school, and had Jadavius Clowney and Steven Gilmore, who at that time was a quarterback. They played in the state championship against each other at Clemson. It was about eight degrees, and it was a lovely night. Well, you've got the same opportunity. You want us to answer your questions, or are you going to do a regular presentation? I'll start with a regular presentation. I'm sure you all won't be shocked. So to answer your question, Judge Berner, is there was a case, Hignell-Stark versus the city of New Orleans. The problem in that case, which is not present in this case, was it had a residency requirement. In other words, you could not have a short-term rental, an Airbnb-type situation, unless you resided in the abode. And, of course, it's hard to be out of state if you reside in New Orleans, and so they found that problematic under the Dormant Commerce Clause. In Rock Hill, we did go three iterations. It may have been nonlinear, but at no stage was anyone's constitutional rights infringed. Part of that's due to the standard of review, mere rationality, and part of it is due to the fact that at no point was, well, really because of the mere rationality. The city of Rock Hill, the council is empowered to make decisions without being subjected to questions. Ms. Steinberg stated that one of the problems to one of the court's questions was, you know, she asked a question in a deposition about whether the city did any studies. Well, that is right in the center mass of the privilege against legislative process. So on that privilege issue, I'm somewhat concerned that the privilege ruling was not sufficiently narrowly tailored. I think about the possibility, for example, of privilege being argued and asserted in a circumstance where there was a racially segregating ordinance passed and there were behind closed doors discussions that a plaintiff challenging under civil rights laws would not be able to obtain on the basis of this kind of privilege ruling. So how do we thread the needle where we find that the city council members are entitled to privilege but still allow there to be sufficient sunshine, as it were, so that individuals who are seeking to vindicate constitutional rights have access to the discussions of the members of the city council? Three things pop to mind. First, the courts have carved out three areas of federal interest, substantial federal interest. That's not one of them, but whether, you know, the legislator in question is a criminal defendant, when you start dealing with voting rights or drawing districts, those cases have been carved out to allow more invasive. Okay, but that's not the circumstance here. Here we have a circumstance where the plaintiff is asserting constitutional rights. Sorry, I took too long. I agree with you that rational basis applies, and perhaps that I think it's very easy to survive rational basis. But taking the district court's privilege ruling to its logical conclusion without any limiting principles, wouldn't it also that same logic apply in a civil rights case asserting that the city council passed an ordinance which was racially motivated? Okay, I took too long getting there. But the second thing I was going to say was I'm not aware of any case that makes that carve out. I'm not sure whether it's never come up or courts have refused. I can't state to that. And then third, I would say that in a civil rights case, the burden of proof is different. I don't know that you would need testimony. I mean, if the enactment was discriminatory of a protected status or protected condition or inalienable condition, then I don't think it really matters what their intention was. I mean, you just look at the ordinance and say, well, does that discriminate or does it not? You can even go farther than that and say, does it have the effect of, and use statistics. Well, legislative intent could be relevant, and certainly if there were discussions behind closed doors, how do we keep black people out of this neighborhood or how do we keep Jews out of this neighborhood, that would be relevant in a case alleging that the ordinance violated those individual civil rights. Under the hypothetical condition, I don't know what I would argue. I would just say that that's not even remotely the case here. And so the lower court was deciding a case based on the facts presented. She wasn't trying to set a test that could apply into all cases, including a civil rights case. I see where the court's coming from, and if I were on the plaintiff or defendant on that side, I think I would be differently prepared. I'm not concerned with the lower court's decision on this record, because there's nothing that she said that one could use for authority in the circumstance you're referring to, to argue that that should not be the case. I mean, either there's cases out there or there's not, so your argument would be. You're asking us to uphold the district court's ruling on legislative privilege. On this record. In order to uphold that ruling, we need to know what the proper standard is, and we need to apply that standard to the facts in this case. Yes, ma'am. So I was hoping you could articulate for me a standard for legislative privilege that would not lead to the circumstance that I just described. Well, in a case where mere rationality, where the Supreme Court has stated that the legislative body doesn't have to give any reason in a mere rationality case, when that is your standard to review, then I would say that the scope of the privilege is absolute. It doesn't matter whether the City of Rock Hill performs studies. It doesn't matter if they talk to experts. None of that matters. It doesn't matter whether they talked amongst each other and thought this or that, because it's mere rationality. The why they did it doesn't matter. The city doesn't have the burden here. The plaintiff does. The plaintiff has to show not just this was not the reason or this. They have to go in and show that there was no possible explanation for the decision. And the fact that these efforts exist across the country, in fact, if you look at the findings in the ordinance, those are very similar findings that were upheld by another court as being appropriate. In this case, the reason for is behind a box, and there's no reason to get into the box, because what's in the box cannot possibly matter based on the Supreme Court's decisions. Well, that's really where we are on this. You've got the Gillett case that opened the door somewhat, and the question is whether this Benesik case that came behind that, the Supreme Court then went on, and it was in the context of a challenge of the congressional map, dealing with a whole different type of issue, but it did say they could discover to the extent of the motives of the officials who produced it. And maybe the differential you can articulate when I think of that is that probably is sort of like the corpus of something. There's a substance of what actually happened as opposed to something outside of that, because they actually were drawn to maps and that sort of thing. But the question is, did it extend it, which is the argument of the voter here, that that extended the Supreme Court's indication that this legislative privilege is not absolute? Your Honor, the Gillett case and the case you're referring to dealt with one of the three exceptions where there is a special federal interest. They are criminal matters against the legislature, voting cases, and redistricting cases. So in those cases, yes, there is a five-part test. The lower court dealt with it. She said the five-part test does not apply because this is not one of those three cases. So you say that's the differentiation with Judge Berner's question, that of this case from those particular instances, this federal first reason you give for legislative privilege. To be very precise, Judge Berner asked a different question because her question did not fall with one of the three categories that I'm aware of, have carved out for the weighing of the five factors. But our case is not one of the three, and the three are, again, criminal prosecutions of the legislature, voting rights cases, and redistricting cases. And in those cases, there is a different test. It allows for a weighing of what sort of piercing beyond the privilege should be allowed. But this is not that case, and there's no case that I'm aware of. In fact, there's a case to the opposite, which is cited. Let me see my sheet. So are you suggesting that the balancing and the four-factor test should only be applied in those three circumstances and in all other circumstances, or certainly when it's rational basis review? There's simply an absolute privilege, and the district court doesn't need to apply the balancing test? I'm not suggesting it. The Fourth Circuit has stated it expressly in Burtnick and Kingsington. So the Fourth Circuit has stated that there is a privilege. It is absolute, and it goes hand-in-hand with the immunity because the immunity is sort of diluted if you're then subjected to seven years of compulsory processes. So that is the rule. Then you have the exception to the rule, which is the cases that involve one of these special Federal questions. And in those special cases, there are three that I'm aware of, the Court says, well, no, we're going to balance it. But then you have what the Court cited in the order. You have Canaan Christian Church, which talked about how the subject in that case was private parties were trying to bring a land deal to fruition, and it compared it to the three examples of our exceptions and said that this is not that. This is a local matter dealing with local issues and is not a special Federal question. And the lower court looked at that and made the same decision in this case and said that this does not rise to the level of elevating it and adding a fourth category. Again, there may be more, but those are the three that I'm aware of. So I would like to correct one thing from before. The third iteration of the ordinance did more than refuse to grandfather indefinitely nonconforming uses. It removed, I mean, in some ways you could look at it as for a property owner, there's no requirement to ask mother may I. One of the nice things about the current ordinance is it has less administrative staff work and has less uncertainty for the applicant. You don't have to say, well, is there something within 300 feet? There's not a 150-unit cap throughout the city. All of those are gone. It took away the need to go get a special exception and wonder, hey, can I do this, and waste time wondering, and then a ZBA or a council says no. It's now a matter of right. You have the right. If you buy a property in the correct zone, you don't have to ask mother may I to any governing official about whether you can use it for a short-term rental. That is a major improvement. The plaintiff is nonplussed about that improvement because he has properties that do not fall within the correct zoning classifications. But by definition, almost all zoning classifications restrict someone's possible uses of their property. That Rock Hill does not decide to grant grandfathering indefinitely is neither here nor there to this case. There is a specific statute that allows for the amortization of uses, nonconforming uses such that a landowner can recoup their investment and not suffer a loss. That is in state law. There are South Carolina cases construing it. It does not matter whether Mr. Hutto is correct, although he's not, that in Rock Hill if the table of zoning districts does not state you can do something in an area, then you can. Actually, it's the opposite. If it's not allowed, then it is disallowed. His argument is that when he started this that it was a legal use of residential property. I don't think that's true, but it does not matter because South Carolina law specifically allows the legislature to phase out nonconforming uses so long as they give sufficient time. There's nothing in the record. The burden of proof is on the plaintiff. There's nothing in the record to suggest that five years is not long enough. I will submit to the court I have yet to see a case in which two years was not enough, including structures. So five years is more than ample based on any precedent coming out of South Carolina. So the notion that First Amendment retaliation, just to get through the causes of action, the question the government, the plaintiff must show that the government took an adverse action, which I believe the adverse action in this case was the amendment in 2023. So the plaintiff would have to have this court believe that in 2023, Rock Hill amended the ordinance for a second time following the quotations that you heard earlier, which occurred in March of 22, to revise the ordinance and allow STRs to be in commercial districts as a matter of right. They would have to show that that was only because he filed a lawsuit and that the city of Rock Hill counsel would not. Does he have to show it's only because, or is it sufficient to show that it was because? It has to be but for, and it has to be a rigorous showing. The causation requirement is rigorous, citing Fourth Circuit in Penley v. McDowell and Hong v. Board of Governors, University of North Carolina. Claimant must show that but for the protective expression, the filing of the lawsuit, the employer would not have taken the alleged retaliatory action, which was cleaning up the ordinance. I mean, if you look at the 22 ordinance, it had a lot of undesirable and perhaps suboptimal components. So, which were all fixed by the 23 ordinance. And then the district court did a good job noting that in a zoning case, when someone complains about an ordinance to rule that the mere revision of the ordinance is evidence of some sort of punishment, really defeats the purpose because what if you're trying to make it better? In their briefs, the plaintiffs have argued that the 23 ordinance did improve the 22 ordinance and cure a lot of what they perceive to be problems. From the record as a whole, this city council was presented by its staff in 2019 with a proposal on what to do with STRs. What the staff came up with was very restrictive. In other words, somebody had to be living in the house and you can only do it up to 14 days because staff looked at it and said this is a residential district. It is not for commercial activity in that way. Rock Hill has no hotels in residential districts, for example. An STR more resembles a hotel than it does a residence, long-term residence for someone living and moving into a community. And so the council did not approve that idea, so it's not like they have some animus against STRs. And then if you look at the first two ordinance, those were their attempts to try to balance the distinction or the difference that an STR in a neighborhood brings to the neighborhood, thinking in some cases my item using is sometimes it can be okay and sometimes it might not be. Those proved to be problematic from their meetings. If you'll notice, the city of Rock Hill has stakeholder meetings as they try to go through these things. They try to listen to folks. We understand the legislative process that's going on here. We understand further that this is an ebb and flow type situation. On one hand, you do have a lot of tourists that come there, and you really need some places like WMB. On the other hand, you've got folks that live there. And you guys, what was the vote on this? What's the total number you have on the city council there? Seven. And what was the vote? Six-one. Six-one. I don't know. Who knows? But the future might break on these things here because they could flip, depending on how that turns out. I don't know how solid things are there, but I'm just saying, where you're going now is really your policy. We certainly respect that. There's some legal issues here that we're going to deal with. I'll ask the judges if you have any further questions. Judge? No. All right. I think we're satisfied that we understand your position. We'll hear from just a few minutes of rebuttal if you choose to exercise such. Yes, I will. So in terms of the legislative privilege, the common law doctrine of legislative privilege merely prevents courts from substituting their own judgment on matters within the lawful discretion of the municipality. But a municipality has no discretion to violate the federal constitution. In this particular case, intent is directly at issue. I disagree with the city's view of retaliation aspect of the case. But even rational basis review, even if you look at the ordinance under the rational basis review, the word rational includes elements of legitimacy and neutrality that must always characterize the performance of sovereign's duty to govern impartially. There's nothing impartial about this ordinance. The record clearly says that the municipality first enacted the moratorium and then revised the regulations to please a small group of prominent residents of one community. It all started with that community and it all continued with that one community and a handful of residents. There's nothing neutral about this ordinance, yes. But isn't that a rational basis? No, it's not. At the time, defendant amended the ordinance in response to plaintiff's action. There were approximately 32,500 residential properties in Rock Hill. The regulation kept short-term rentals at 150 units already. There were only 33 permanent short-term rentals operating. There were no complaints against permanent short-term rentals, and there were two commercial event venues already operating in residential communities because the data shows that only 0.1% of the residential housing was being used as short-term rentals and only 0.5% could be used as short-term rentals. One indeed does not need to be an economist to know that it is inconceivable that 33 or even 150 units can have any impact on the character, affordability, or shortage of residential housing. Those were the post hoc justifications that were asserted only in response to the lawsuit. The prior findings supported short-term rentals. They found that they were beneficial for the community, in particular to the tourism, local tourism industry. So next, equal protection. The Supreme Court stated that the city may not avoid the strict use of the equal protection clause by deferring to the wishes or objections of some fraction of the body politic. That goes to your question, Judge. Private biases may be outside the reach of the law, but the law cannot directly or indirectly give them effect. There is evidence that the city was deferring to the private biases in passing the regulations. Lastly, as to retaliation, the obligation to view the city's explanations charitably does not excuse the city from providing any explanation at all, and none was provided for the sunset provision. All right. Further questions? Judge? I want to thank both of you for your very able arguments. I, in court, will take this matter for consideration, but I do want to recognize that all the good citizens of Rock Hill, as well as yourself, your client, maybe for the city, there is still the opportunity for you to work something out before this comes to an opinion. But if you don't, I promise you we will give you an opinion on it. Right now, we're going to come down, we're going to recancel, as is our tradition, and then we'll take a brief recess and come back for the final case. This Honorable Court will take a brief recess.
judges: James Andrew Wynn, Stephanie D. Thacker, Nicole G. Berner